**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Mack Industries, Ltd., et al., | ) | |
| | ) | No. 17 B 09308 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Ronald R. Peterson, as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 A 00372 |
| | ) | |
| Capital One N.A. et al, | ) | |
| | ) | |
| Defendant. | ) | Judge Carol A. Doyle |

**Memorandum Opinion**

Chapter 7 trustee Ronald Peterson filed this adversary proceeding against Capital One, N.A., Capital One Financial Corp. (collectively "Capital One"), and Menard Inc.  He seeks to recover as fraudulent transfers payments made by debtor Mack Industries Ltd. ("Mack") to Capital One for purchases Mack made at Menards using a Capital One credit card.  The trustee contends that Mack used the goods it purchased from Menards to improve real property that it did not own as part of a fraudulent scheme to deplete Mack's assets.  He also seeks to recover some of the payments as preferences.

1

Capital One moved to dismiss most of the amended complaint. It argues that the trustee has not alleged a plausible claim for fraudulent transfer based on either constructive fraud or actual fraud. It also argues that the trustee has not alleged any claims against Menards so the complaint against it should be dismissed in its entirety. Capital One is correct regarding the fraudulent transfer claim against it based on constructive fraud and all the claims against Menards. Those claims will be dismissed. Capital One's motion to dismiss the fraudulent transfer claim against it based on actual fraud will be denied.

1.    <u>Background and Amended Complaint</u>

The trustee filed a complaint against Capital One and Menards alleging two claims to avoid fraudulent transfers and a claim to avoid preferential transfers. The court granted a motion to dismiss a similar adversary proceeding in *Peterson v. McClean (In re Mack Industries, Ltd.)*, No. 19-ap-00433, 2019 Bankr LEXIS 3603 (Bankr. N.D. Ill. Nov. 20, 2019). The fraudulent transfer claims in this case were similar to those alleged in *McClean*. The trustee consented to the dismissal of his complaint against Capital One and Menards. He was granted leave to amend and he filed an amended complaint.

In the amended complaint, the trustee again alleges two claims to avoid fraudulent transfers and a claim to avoid preferential transfers. He seeks to recover payments of approximately $3.3 million that Mack made to Capital One to pay down its credit card balances. Exhibit A to the amended complaint shows payments made by Mack to Capital One between January 2, 2013 and March 22, 2017. Exhibit B is a 275 page document entitled "Bills and Charges." It contains approximately 12,000 lines stating a date, amount, address and PIN

2

number, and owner of the property, presumably where Mack used supplies purchased at Menards with the Capital One credit card.  The trustee acknowledged in response to the motion to dismiss that Exhibit B shows that approximately $700,000 of the "bills and charges" were for supplies allegedly used in property owned by American Residential Leasing Company LLC, an unsecured creditor of Mack.  He is not seeking to recover those transfers.  He seeks to recover the remaining $2.6 million in payments to Capital One, which he claims were for charges Mack made to purchase building supplies that were used in properties owned by parties other than Mack or American Residential.

In Count 1, the trustee alleges that the payments were constructively fraudulent under the Illinois Uniform Fraudulent Transfer Act and § 548(a)(1)(B) of the Bankruptcy Code.  He contends that Mack did not receive reasonably equivalent value for the payments to Capital One because Mack used the building supplies it purchased to improve properties owned by third parties.  In Count 2, the trustee alleges that Mack incurred the charges and made the payments to Capital One with actual intent to defraud.  He bases this claim primarily on a statement allegedly made by a vice president of Mack in June 2014 threatening American Residential that if it did not renegotiate a significant contract, Mack would dissipate its assets to prevent American Residential from collecting from Mack.  In Count 3, the trustee seeks to recover approximately $38,000 in payments to Capital One as preferences under § 547 of the Bankruptcy Code.  Capital One is not seeking dismissal of the preference claim against it.

Regarding the actual fraud claim in Count 2, the amended complaint alleges as follows. Mack's primary business was "flipping houses" - buying properties, improving them, and selling or renting them.  Amended Complaint ¶ 8.  American Residential purchased hundreds of

3

properties from Mack, which then leased the properties back from American Residential under a Master Lease Agreement ("Agreement") and sublet them to tenants.  In the summer of 2014, Mack began to claim that it could not meet its obligations under the Agreement and sought to renegotiate it.  When American Residential resisted, Erik Workman, Mack's Vice President of Sales and Marketing, told Christopher Byce, formerly Senior Vice President of Investments of American Residential's prior parent company, that "the Debtor would transfer its assets to related entities for nothing in return to hinder American Residential's ability to exercise its legal remedies as a creditor."  Amended Complaint, ¶ 32.  By September 2014, Mack had stopped making payments under the Agreement.  Amended Complaint ¶ 36.  In December 2014, Mack sent American Residential a proposed revised contract that Mack said was, essentially, not negotiable.  Amended Complaint ¶ 30.  American Residential refused to change the Agreement.

Even before Workman made his threat about dissipating assets, Mack began to "prepare for a possible breakdown in the business relationship."  Amended Complaint ¶ 41.  "In the months leading up to and during the negotiations with American Residential, the debtor had already begun dissipating its assets."  ¶ 42.  Before 2013, the McClellands, who own Mack and many related entities, ran almost the entire real estate business in Mack's name.  Amended Complaint  ¶ 43.  In 2013, the McClellands began to "create new entities and to divert business opportunities and assets from the Debtor to those entities."  Amended Complaint ¶ 44.  They created at least 15 new entities in 2013, at least four new entities in 2014, at least six new entities in 2015, and at least two new entities in 2016.  Amended Complaint ¶ 45.  Mack owned five of these entities:  Mack Industries II LLC, Mack Industries III LLC, Mack Industries IV LLC, Mack Industries V LLC, and Mack Industries VI LLC.  Amended Complaint ¶ 46.  All the other

4

new entities were owned by James K McClelland, James H. McClelland (James K. McClelland's son), or both. Amended Complaint ¶ 47.

Although Mack owned some real estate after 2013, "the vast majority of real estate acquired for flipping was acquired by the new entities." Amended Complaint ¶ 49. Mack also transferred real estate from itself to the new entities. Amended Complaint ¶¶ 49, 50. The McClellands thereby reduced the assets "that the debtor had that could be collected by American Residential." Amended Complaint ¶ 50. Mack also "drew down" on its own assets to benefit the other entities. Amended Complaint ¶ 51. It paid contractors to work on and improve real property owned by the other entities, and paid bank loans incurred by the other entities. Complaint ¶52. The McClellands also "extracted" at least $10.7 million in cash from Mack and other entities. Amended Complaint ¶ 54. Mack concealed its dissipation from American Residential. After June 2014, it failed to provide American Residential with Quarterly Statements required under the Agreement detailing its income. Amended Complaint ¶¶ 56, 57. American Residential tried to take over its own properties in 2016 but Mack refused to provide information about the subtenants. Amended Complaint ¶ 60. In March 2016, American Residential sued Mack and related entities in state court. Amended Complaint ¶ 39.

2.   <u>Constructive Fraud</u>

Capital One argues that the fraudulent transfer claim based on constructive fraud in Count 1 must be dismissed because the trustee has failed to allege an essential element of his claim: that Mack did not receive reasonably equivalent value for the payments to Capital One. It asserts, and the trustee does not contest, that the complaint and attachments show that Capital

5

One provided credit to Mack and Mack's payments were on account of that antecedent debt.

Capital One therefore contends that Mack received reasonably equivalent value as a matter of

law for the debt repayments. It argues that what Mack chose to do with the goods it purchased

from Menards with the credit provided by Capital One does not matter. The trustee responds

that *Mack* did not receive any value because Mack used the goods it purchased with the credit

provided by Capital One to increase the value of properties that Mack did not own. Capital One

is correct. Mack received reasonably equivalent value for each payment to Capital One.

The trustee brings his constructive fraud claim under the Illinois Uniform Fraudulent

Transfer Act, 740 ILCS 160/5(a)(2), 6(a), and 8(a), via § 544(b)(1) of the Bankruptcy Code, as

well as under § 548(a)(1)(B) of the Bankruptcy Code. A plaintiff seeking to avoid a fraudulent

transfer based on constructive fraud under § 548(a)(1)(B) must plead and prove the following:

(1) a transfer of the debtor's property or interest; (2) made within two years before the date the

bankruptcy petition was filed; (3) for which the debtor received less than a reasonably equivalent

value in return; and (4) that the debtor (a) was insolvent on the date of the transfer or became

insolvent as a result, (b) engaged in business or a transaction as a result of which the debtor's

remaining capital was unreasonably small, or (c) intended to incur, or should have known he

would incur, debts he would be unable to pay. *KHI Liquidation Trust v. C. Goshy Enterprises,*

*Inc. (In re Kimball Hill, Inc.)*, No. 10-ap-998, 2012 WL 5880657, at *5 (Bankr. N.D. Ill. Nov.

19, 2012); *Cox v. Grube (In re Grube)*, No. 09-ap-8111, 2012 WL 3263905, at *4 (Bankr. C.D.

Ill. Aug. 9, 2012); *Martino v. Edison Worldwide Capital (In re Randy),* 189 B.R. 425, 440

(Bankr. N.D. Ill. 1995). Under the IUFTA, the elements are the same but the statute of

limitations is four years. 740 ILCS 160/5, 160/10; *Reinbold v. Morton Community Bank (In re*

6

*Mid-Illini Hardwoods, LLC*), 576 B.R. 598, 604 (Bankr. C.D. Ill 2017); *see Zimmerman v. Paulsen*, 524 F. Supp. 2d 1077, 1080 (N.D. Ill. 2007).

-<u>Reasonably Equivalent Value</u>

The standard for reasonably equivalent value is the same under Illinois law and § 548(a). *Baldi v. Samuel Son & Co, Ltd.,* 548 F.3d 579, 580 (7th Cir. 2008); *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer (In re Jumer's Castle Lodge Inc.)*, 472 F.3d 943, 947 (7th Cir. 2007) ("Because the IUFTA is a uniform act, we may look to cases decided under 11 U.S.C. § 548, as well as cases interpreting other states' versions of the [UFTA], to determine the meaning of the phrase 'reasonably equivalent value.'").

Determining whether a debtor received reasonably equivalent value for the transfer involves a three-part inquiry: (1) did the debtor receive some value, (2) was the value received in exchange for the transfer by the debtor, and (3) did the value received by the debtor have a reasonable equivalence to what the debtor transferred. *Mid-Illini Hardwoods*, 576 B.R. at 604. Here, the trustee does not dispute that Mack incurred debt by charging purchases on its Capital One credit card and that the debt was decreased by the amount paid to Capital One so the second and third inquiries are not disputed. The parties contest whether the facts alleged can establish that *Mack* received value from paying its credit card debt when it used the goods purchased with the credit card to improve properties owned by third parties.

The focus of the inquiry regarding reasonably equivalent value "must be on the specific transaction the trustee seeks to avoid, *i.e.*, the *quid pro quo* exchange between the debtor and the transferee, rather than an analysis of the transaction's overall value to a debtor as it relates to the

welfare of the debtor's business." *Balaber-Strauss v. Sixty-Fve Brokers (In re Churchill Mort. Inv. Corp.),* 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000). Courts seek to ensure that there is an exchange of property that is a fair equivalent and "not disproportionately small as compared with the value of the property or obligation obtained." *Id.* Courts examine "the objective value of the goods and services provided rather than the impact the goods and services had on the bankrupt enterprise." *Trauner v Delta Air Lines, Inc. (In re Think Retail Solutions, LLC*), No. 17-ap-5078, 2019 WL 2912717 at *16 (Bankr. N.D. Ga. 2019) (quoting *Orlick v. Kozyak (In re Financial Federated Title & Trust, Inc.)*, 872 F.3d 1235, 1248 (11th Cir. 2017) and *Merrill v. Allen (In re Universal Clearing House Co.*, 60 B.R. 985, 998-99 (D. Utah 1986)); *PSN Liquidating Trust v. Intelsat Corp (In re PSN USA, Inc.)*, 615 F. App'x 925, 932 (11th Cir. 2015 (the debtor may receive value even if the transfer increases its insolvency). "[U]nder § 548, in assessing the "value" of property, goods or services provided directly to the debtor, the question is not whether the debtor subjectively benefitted from the property it received; the operative question is whether the property, goods, or serviced provided had objective value." *McHenry v. Dillworth (In re Caribbean Fuels Am., Inc.)*, 688 F. App'x 890, 894-95 (11th Cir. 2017).

Courts determine the objective value as of the date of the transfers, not on a post-transfer basis that considers whether the purchase was wise or impacted the financial picture of the debtor. *Think Retail*, 2019 WL 2912717 at *16. *See also Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009) ("Courts will not look with hindsight at a transaction because such an approach could transform fraudulent conveyance law into an insurance policy for creditors."). This is true even when the transaction in question harmed creditors and diminished the debtor's bankruptcy estate. As the *Churchill* court noted, debtors often engage in "improvident purchases

8

or expenditures which have a detrimental effect on creditors and may even be a precipitating

cause of bankruptcy." *Id*. at 681. "The fact that transactions may 'exacerbate the harm to

creditors and diminish the debtor's estate' from an overall perspective does not mean that the

debtor received less than reasonably equivalent value in respect of each particular transaction."

*Id.*

In *Churchill,* a trustee sought to avoid transfers made to various brokers who originated

mortgages and solicited investors in a debtor that was operating a ponzi scheme. The trustee

alleged that the payments to the brokers were avoidable as fraudulent transfers based on actual

and constructive fraud because the business generated by the brokers clothed the debtor's

fraudulent enterprise in an aura of respectability and enabled the corrupt management to

continue its scheme. The court held that each transaction must be evaluated based solely on the

value given and received by the debtor. The debtor paid a reasonable amount for the services it

received so the court concluded that the debtor received reasonably equivalent value without

considering how the services enabled the debtor to carry out its fraud.

The analysis regarding reasonably equivalent value does not change when a third party

benefits from the transfer. In *Think Retail,* 2019 WL 2912717, the court held that a debtor

received reasonably equivalent value from an airline when the debtor's principal purchased

airline tickets for her personal use and the personal use of others. The debtor got reasonably

equivalent value for the airline tickets because it controlled all the rights it purchased from the

airline. These rights included the right to a seat on a flight, the right to designate the name of the

passenger for the ticket, the right to cancel the flight, and the right to modify the scheduled travel

date and destination. The use of those rights by third parties did not negate the objective value

9

given by the airline to the debtor.

In fact, even when a debtor pays the debt of another party, it may nevertheless receive reasonably equivalent value.  Though the general rule is that a debtor does not receive reasonably equivalent value by paying the debt of a third party, courts still examine the facts and circumstances to determine whether the debtor indirectly got reasonably equivalent value, such as through multi-party transactions.  *Mid-Illini Hardwoods,* 576 B.R. at 607.

### -Value - Repaying an Antecedent Debt

This court has previously concluded in similar adversary proceedings that Mack received reasonably equivalent value from vendors who provided goods and services to Mack no matter what Mack chose to do with those goods and services.  *Peterson v. Ferguson Enterprises, Inc.(In re Mack Industries, Ltd.*), No. 19-ap-436 (Bankr. N.D. Ill. Nov. 10, 2020); *Peterson v. TTS Granite, Inc. (In re Mack Industries, Ltd.*), No. 19-ap-522 (Bankr. N.D. Ill. Nov. 10, 2019). Here, Capital One's argument is even stronger than that of vendors of goods and services.  A debtor always receives reasonably equivalent value when it repays its own antecedent debt.  That is exactly what Mack did with each payment listed in Exhibit A to the amended complaint.

Section 548(d) provides that repayment of an antecedent debt is "value" for purposes of § 548, including for determining reasonably equivalent value in § 548(a).  It states that "value" means "satisfaction ... of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2)(A).  Many courts have held that a reduction in debt owed by a debtor is reasonably equivalent value.  As the Seventh Circuit explained in *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474,477-78 (7th Cir. 2005), "repayment of an antecedent loan comes within the 'reasonably

equivalent value' rule - which is just another way of saying that preferential transfers differ from fraudulent conveyances." Similarly, the Second Circuit affirmed the dismissal of a complaint alleging a constructively fraudulent transfer when the debtor repaid a loan when the lender was aware that insiders were looting the debtor, which had obtained new loans to repay the loan in question. *Sharp Int'l Corp. v. State Street Bank and Trust Co.(In re Sharp Int'l Corp.)*, 403 F.3d 43, 53-56 (2nd Cir. 2005). The Sixth Circuit reached the same conclusion, stating that "[t]ypically, a dollar-for-dollar reduction in debt constitutes - as a matter of law - reasonably equivalent value for purposes of the fraudulent-transfer statutes." *Southeast Waffles, LLC v. U.S. Dept. of Treasury (In re Southeast Waffles, LLC)*, 702 F.3d 850, 857 (6th Cir. 2012). *See also Cox v. Nostaw, Inc (In re Central Ill. Energy Coop.)*, 521 B.R. 868, 873 (Bankr. C.D. Ill. 2014) ("a debtor's transfer of funds in satisfaction of its own debt is not constructively fraudulent"); *Official Comm. of Unsecured Creditors v. BNP Paribas (In re Propex Inc.)*, 415 B.R. 321, 324 (Bankr. E.D. Tenn. 2009) (finding reasonably equivalent value as a matter of law under the Bankruptcy Code and UFTA when the debtor received a dollar-for-dollar reduction in debt in exchange for its $20 million payment).

The trustee argues that this principle does not apply here because Mack fraudulently *incurred* the *obligation* it was repaying. He contends that all the cases relied on by Capital One involved underlying debt that was not "at issue." The trustee presumably means that no one in those cases questioned whether the underlying debt that was repaid was incurred for the benefit of the debtor. The trustee contends that the debt to Capital One was fraudulently incurred because Mack used what it purchased at Menards with credit from Capital One to improve properties owned by others. This argument has no merit for two reasons.

11

-Fraudulent Intent Not Relevant

First, as the *B.E.L.T.* court held, repayment of an antecedent debt provides reasonably

equivalent value as a matter of law for purposes of constructive fraud.  It makes no difference

whether the debtor incurred the debt to benefit another.  *See also Brandt v. KLC Financial, Inc.*

*(In re Equipment Acquisition Resources, Inc.)*, 481 B.R. 422, 428 n.4 (Bankr. N.D. Ill. 2012)

(explaining the difference between constructive fraud and actual fraud, noting that the

transferor's intent is irrelevant to a constructively fraudulent transfer).  The three cases cited by

the trustee do not hold otherwise.  All three involved a debtor guaranteeing the debt of another

entity.  *Liebowitz v. Parkway Bank and Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574

(7th Cir. 1998) (the court noted that intercorporate guarantees can benefit the guaranteeing

corporation but concluded that the debtor in that case did not receive reasonably equivalent value

for its guarantee of a related entity's debt); *Tourtellot v. Huntington Nat. Bank (In re Renegade*

*Holdings, Inc.)*, 457 B.R. 441 (Bankr. N.D.N.C. 2011) (a debtor did not receive reasonably

equivalent value when it guaranteed the debt of a related entity); *In re Doctor's Hospital of Hyde*

*Park v. Desnick (In re Doctor's Hospital)*, 360 B.R. 787 (Bankr. N.D. Ill. 2007), *aff'd*, 406 B.R.

299 (N.D. Ill. 2009), *vacated on other grounds sub nom. Paloian v. LaSalle Bank, N.A.*, 619 F.3d

688 (7th Cir. (2010) (same).  *See also Hackeling v. Charter Financial, Inc. (In re Luis Electrical*

*Contracting Corp.)*, 149 B.R. 751, 758-59 (lender provided reasonably equivalent value for loan

repayment even though loan proceeds went to a third party for leases of equipment that did not

exist).  None of the cases cited by the trustee involved a debtor paying down its own debt.

Here, the trustee does not allege that Mack guaranteed or otherwise took on the debt of

another.  Instead, he alleges that Mack opened the account with Capital One and used the credit

12

provided to pay for purchases it made from Menards. Amended Complaint ¶¶ 15, 16. The debt

to Capital One was solely Mack's. Mack received the credit to purchase whatever it chose, it

alone owned the goods it purchased, and it alone owed the money to Capital One. The reduction

in the balance owed to Capital One provided reasonably equivalent value to Mack as a matter of

law no matter what Mack's intent.


-<u>Menards Provided Value</u>

Second, the trustee's argument fails because the premise underlying his claim - that the

purchases from Menards provided no value to Mack - is mistaken. As this court recently

concluded in *TTS Granite* and *Ferguson*, when an entity provided goods and services to Mack in

exchange for payment of a reasonable price, Mack received reasonably equivalent value no

matter what Mack then chose to do with the goods and services it purchased. Here, Mack

received reasonably equivalent value for the goods it purchased from Menards.

As discussed above, to determine whether Mack got reasonably equivalent value, the

court must examine only the specific transactions at issue, not Mack's overall financial condition

or any fraudulent scheme that Mack's management might have been perpetrating. Here,

Menards provided real value to Mack. Mack ordered building supplies, paid for them using

credit from Capital One, and became the sole owner of supplies. The purchases underlying the

credit transactions with Capital One involved a simple *quid quo pro* - goods exchanged for

payment. Like the airline tickets purchased in *Think Retail*, Mack got what it paid for in each

transaction: building supplies that it could use any way it chose. The fact that Mack may have

used the supplies it owned to benefit others or that Mack may have been engaging in an overall

scheme to rid itself of assets does not diminish the value Menards provided to Mack.

The trustee has failed to cite a single case in which an arms-length transaction between a debtor and a vendor was avoided as constructively fraudulent based on what the debtor chose to do with those goods and services. The trustee cites only an unpublished order in *Krudy v. Chase Bank USA, N.A. (In re Rainmaker Group, Inc.)*, No. 12-ap-50104, 2013 Bankr. LEXIS 1483 (Bankr. S.D. Ind. April 9, 2013). In *Krudy*, a chapter 7 trustee filed a "bare-bones" complaint alleging a fraudulent transfer claim against a corporate debtor's principals who had incurred corporate debt for personal purchases. The court concluded that the trustee must be pursuing a constructive fraud claim under Indiana law and that he sufficiently pled the element of lack of reasonably equivalent value. The court stated that "[f]raudulent transfer statutes exist to undo the damage done by bad-acting corporate principals who use the corporate credit card to incur personal debt and use corporate funds to pay for it." *Id*. at *7. The court cited no authority for this statement. It is both unsupported and incorrect. As explained above and in myriad cases, the purpose of constructive fraudulent conveyance law is to ensure there was a *quid pro quo* for what the debtor gave. The decision also is directly contrary to binding Seventh Circuit authority, discussed above, recognizing that repayment of a loan gives reasonably equivalent value for purposes of constructive fraudulent transfer law. The *Krudy* order has no persuasive value.

Fraudulent conveyance law is grounded in equity and is designed to enable a trustee or creditors to avoid a transfer when the transferee received more from the debtor than the debtor received from the transferee. *Churchill,* 256 B.R. at 682 (Bankr. S.D.N.Y. 2000). It is not designed to turn every vendor into an insurer to creditors against corporate malfeasance. If the trustee could prevail on his constructive fraudulent transfer claim in this case, every party who

provides credit or sells goods could become in effect a guarantor of the debts of all purchasers who make inappropriate use of the goods purchased. That is not the law, nor should it be. Here, Mack received credit and the balance it owed was reduced with each payment to Capital One. It also got the supplies from Menards that it paid for. It received reasonably equivalent value from every view of the transactions.

The trustee has not pled facts that support the essential element of lack of reasonably equivalent value. Nor will the trustee be able to amend to fix this defect; the premise of his claim is faulty. His claim in Count 1 based on constructive fraud will be dismissed with prejudice.


3.    <u>Actual Fraud</u>

Capital One also seeks dismissal of the fraudulent transfer claim based on actual fraud in Count 2 of the amended complaint. It argues that the trustee failed to allege a plausible claim with the particularity required by Rule 9(b).

The following standards apply to a motion to dismiss a fraud claim. Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 8. A complaint must clear "two easy-to-clear hurdles" to satisfy Rule 8(a). *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough information to give the defendant "fair notice" of the claim. *Reger Dev't. LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2019). The complaint need not make detailed factual allegations but there must be at least some facts supporting each element of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

15

S.Ct. 1937, 1949-50 (2009). Second, the complaint must plausibly suggest that the plaintiff has

a right to relief, raising that right above the speculative level. *Concentra*, 496 F.3d at 776.

Satisfying this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation . . . . A pleading that offers . . . a formulaic recitation of the elements of a cause of

action will not do." *Id.* Put another way, "[t]hreadbare recitals of elements of cause of action,

supported by mere conclusory statements, do not suffice." *Id.* Plaintiffs may not "merely parrot

the statutory language of the claims they are pleading . . . rather than providing some specific

facts to ground those legal claims . . . ." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

When alleging fraud, however, Rule 9(b) requires more. A plaintiff must "state with

particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P.

7009. Particularity means "the who, what, when, where and how: the first paragraph of any

newspaper story." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996). The

particularity standard is "somewhat relaxed" for a bankruptcy trustee because he may lack

information that the debtor would have. *See, e.g., In re Grube*, 500 B.R. 764, 776 (Bankr. C.D.

Ill. 2013); *Marwil v. Oncale (In re Life Fund 5.1 LLC)*, No. 10-42, 2010 WL 2650024 (Bankr.

N.D. Ill. June 30, 2010). Nevertheless, the trustee must still comply with the "who, what, when,

where and how test" of particularity. *Life Fund 5.1*, 2010 WL 2650024 (fraudulent transfer

claims filed by a trustee were dismissed for failure to plead the precise amount of the transfer,

the date of the transfer, and the debtor from whose account the money was transferred).

Fraudulent intent may be shown through direct evidence or circumstantial evidence,

often referred to as "badges of fraud." As explained in *Frierdich v Mottaz*, "[d]irect proof of

actual intent to defraud is not required—indeed, it would be hard to come by—and a trustee can

16

prove actual intent by circumstantial evidence." 294 F.3d 864, 869-70 (7th Cir. 2002). Courts

often look to "badges of fraud" as circumstantial evidence. *Id*. These "badges" include:

whether the debtor retained possession or control of the property after the transfer, whether the

transferee shared a familial or other close relationship with the debtor, whether the debtor

received consideration for the transfer, whether the transfer was disclosed or concealed, whether

the debtor made the transfer before or after being threatened with suit by creditors, whether the

transfer involved substantially all of the debtor's assets, whether the debtor absconded, and

whether the debtor was or became solvent at the time of the transfer. *Id*.

Capital One argues that the trustee's actual fraud claim does not pass muster under these

standards. It contends that the amended complaint contains only conclusory allegations about a

fraudulent scheme to deplete Mack's assets and that there are no allegations connecting that

general scheme to the transactions with Capital One. The trustee responds that he has not only

alleged badges of fraud that provide circumstantial evidence of actual fraud, he has alleged an

"actual admission" of Mack's fraudulent intent through the statement of Workman to Byce.

The trustee has stated a claim for actual fraud with particularity, but just barely. The

lynchpin of his claim is the alleged threat by Workman to Byce that if American Residential did

not renegotiate the Agreement, Mack "would transfer its assets to related entities for nothing in

return to hinder American Residential's ability to exercise its legal remedies as a creditor or

otherwise." Amended Complaint ¶ 32. The trustee has provided enough of the who, what, and

when for this alleged statement to satisfy Rule 9(b).[1]

---

[1]The trustee also alleges another threat that Workman made to Byce - that Mack's
"special relationships with local authorities in Cook County and surrounding areas would
prevent American Residential from exercising management and control over its properties."

Capital One argues in reply that Workman's alleged threat does not match the trustee's allegations. Workman said that Mack would transfer its assets to related entities. Here, the payments were for legitimate credit card debt owed by Mack. Though the trustee did not have an opportunity to respond to this argument, he would undoubtedly say that Mack's purchase of goods that ultimately benefitted a different company is close enough to what Workman threatened to support his claim. The court agrees, but only because it must make all reasonable inferences in favor of the trustee.

Capital One also contends that this one alleged threat is insufficient to justify a fraud claim for many thousands of ordinary uses of the Capital One credit card. But the trustee supported his allegation about the Workman threat with various other allegations regarding the scheme to defraud. These allegations, described in more detail above, include that (1) the McClellands began creating many new entities to conduct the kind of business Mack had previously conducted, (2) they transferred real property owned by Mack to these new entities for no consideration, (3) Mack "drew down" on its own assets to benefit the other entities, (4) Mack paid contractors to do work on properties owned by the other entities, (5) Mack paid the loans of other entities, (6) Mack concealed all of these actions from American Residential by failing to provide the quarterly income statements required under the Agreement, and (7) the McClellands "extracted" at least $10.7 million in cash from Mack and the other entities.

---

Amended Complaint ¶ 33. This alleged threat does not support the trustee's claim of actual fraud. First, it is not plausible that any owner of hundreds of properties would take this threat seriously. If anything, the implausibility of this alleged threat undermines the trustee's position that the other threat by Workman - that the Mack's assets would be gutted - should be taken seriously. Second, this threat does not fit the trustee's theory that Mack intended to defraud by depleting its assets in any event.

Some of these allegations could fall within the various badges of fraud discussed above.[2] None is made with any particularity or specifically connects the credit transactions with Capital One to the allegedly fraudulent scheme. But taken together, assuming they are true and making all reasonable inferences from them in favor of the trustee, the allegations in the amended complaint are just enough to allege a plausible claim for actual fraud with sufficient particularity to survive a motion to dismiss.

Capital One also points to various weaknesses and contradictions in the trustee's allegations that it contends undermine the plausibility of the claim. For example, up to half of the transactions described in Attachment B to the amended complaint occurred before the Workman threat in June 2014. The transactions go back to December 2012, when Mack's relationship with American Residential had just begun so Mack presumably had no fraudulent intent. And nothing in the complaint or the attachments distinguishes pre-threat transactions from post-threat transactions. The trustee has alleged, however, that the efforts to deplete assets began before the Workman threat. The court must assume this is true and make all reasonable inferences in favor of the trustee. The court need not make the unreasonable inference that Mack had fraudulent intent in December 2012, when it entered into its agreement with American Residential. It can reasonably be inferred, however, that Mack started acting with fraudulent intent at some point before or in June 2014. The court need not determine when that happened to conclude that the trustee stated a claim for at least some of the transactions alleged in the amended complaint.

---

[2]The allegations about the creation of new entities to hold newly purchased properties does not necessarily demonstrate a fraudulent intent, since the use of separate entities to hold different real properties is a widespread, legitimate business practice.

Capital One also contends that the $700,000 of the transactions for supplies that were allegedly used in properties owned by American Residential further undercut the trustee's theory that Mack was trying to defraud American Residential. This is true. Yet the court must make inferences in favor of the trustee and concludes that there is enough to allege a plausible claim based on actual fraudulent intent despite the obvious contradictions in the facts alleged.

Finally, Capital One argues, in effect, that it is not possible to state a claim for fraudulent transfer based on actual fraud to recover the repayment of antecedent debt unless the payments were made as part of a Ponzi scheme or to a corporate insider. It cites the *B.E.L.T.* decision, in which the court stated that it was unaware of any case from Illinois or any other state that concludes that a repayment of a debt to a third party was made with actual intent to defraud. 403 F.3d at 478. The trustee responds with the same argument he made regarding the constructive fraud claim: that there was no contention in *B.E.L.T* or the other cases cited by Capital One that the repaid debt itself was incurred with actual fraudulent intent. This is true, and while it makes no difference for a constructive fraud claim, it does matter for a claim based on actual fraud. The *B.E.L.T.* court stated that it found no cases concluding that a debt repayment was a fraudulent transfer based on actual fraud but it did not eliminate the possibility of such a claim being potentially valid. Instead, it analyzed the factual allegations in the complaint to determine if they stated a claim based on actual fraud. *Id.* The court concluded that the plaintiff failed to allege facts supporting any badges of fraud so it affirmed the district court's dismissal of the actual fraud claim. But the *B.E.L.T.* court's analysis recognized that it may be possible to state a fraudulent transfer claim based on actual intent to defraud even if the defendant provided value to the debtor by reducing debt. *See Brandt v. KLC Fin., Inc. (In re Equip. Acquisition Res., Inc.)*,

20

481 B.R. 422, 427 (Bankr. N.D. Ill. 2012) (explaining the differences between fraudulent

transfer claims based on actual fraud versus constructive fraud).

The facts alleged in the amended complaint are not compelling but they are just sufficient

for the trustee to proceed with his claim based on actual fraud.  The motion to dismiss the claim

in Count 2 against Capital One will be denied.


4.    <u>Affirmative Defense - For Value in Good Faith</u>

Capital One also argues that both of the fraudulent transfer claims against it should be

dismissed because the allegations in the amended complaint establish Capital One's affirmative

defense that it gave value in good faith to Mack.  Section 548(c) provides that a trustee cannot

recover transfers that may otherwise be constructively or actually fraudulent if they were

received "for value and in good faith."  11 U.S.C. § 548(c).  Illinois law provides a similar

defense under the IUFTA.  740 ILCS 160/9(a). As discussed above, § 548(d) provides that value

includes the satisfaction of an antecedent debt.

Capital One is correct that the allegations of the complaint establish that it provided value

for purposes of this affirmative defense.  The trustee acknowledges that the payments to Capital

One decreased Mack's debt.  Capital One argues that the factual allegations in the amended

complaint also demonstrate its good faith.  It acknowledges that to establish a transferee's good

faith, it must appear "that the circumstances surrounding the transfers at issue would not have

placed a reasonable person on inquiry notice of the alleged fraud."  *Equip. Acquisition Res.*, 481

B.R. at 429.  It contends that the factual circumstances alleged in the complaint "establish" that

nothing would have placed Capital One on notice of Mack's alleged fraudulent scheme.  It points

21

to the factual allegations discussed above that undercut the trustee's actual fraud claim, including that Exhibit B shows 12,000 ordinary transactions over the course of more than four years with no discernable change in transactions over time.

It is true that the trustee has not even argued that Capital One did *not* take the payments in good faith and the circumstances described in the amended complaint are consistent with Capital One's contention regarding good faith.  Usually, however, the merits of an affirmative defense cannot be decided on a motion to dismiss.  A plaintiff need not preemptively plead facts negating an affirmative defense.  *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *Equip. Acquisition Res.*, 481 B.R. at 429.  While it is possible to plead oneself out of court by pleading "all the ingredients of an impenetrable defense," *Xechem*, 372 F.3d at 901, the trustee has not gone quite that far here.  Though the facts alleged in the amended complaint support Capital One's contention that the payments were received in good faith, the trustee has not alleged enough specific facts to make it an "impenetrable defense."

Capital One is not entitled to dismissal of the fraudulent transfer claims based on its affirmative defense that it took for value and in good faith.


5.   Claims Against Menards

Capital One also argues that the trustee has not alleged any claims against Menards, which is not a party to Capital One's credit card agreement with Mack.  Capital One contends that the trustee's allegations are focused solely on recovering the payments made to Capital One. The transfers described in Exhibit A to the amended complaint that the trustee seeks to recover were all made solely to Capital One.  Menards is mentioned only in three places in the amended

complaint: (1) the first sentence, which states that Mack "transferred $3,297,257.44 to Capital One N.A., Capital One Financial Corp, and Menard Inc. (collectively "Capital One")," (2) Paragraph 13, which states that Menard Inc. is a chain of home improvement stores, and (3) Paragraph 14, which states: "[i]n partnership with Capital One N.A. and Capital One Financial Corp., Menard offers a credit card for use in its stores."

Capital One is correct that the trustee has failed to allege any claims against Menards. As Capital One argues, a plaintiff cannot simply lump defendants together in all the allegations of the complaint. It must provide a factual basis to distinguish their conduct. *See, e.g., Ôchre LLC v. Rockwell Architecture Planning & Decisn, P.C.,* No. 12-cv-2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (quoting *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001)) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants"). The trustee has failed to do this. There are no allegations of any transfers to Menards that the trustee seeks to recover. The trustee includes all three defendants - the two Capital One entities and Menards - in his "Capital One" defined term that he uses throughout the complaint as though they are the same or related entities. They are not. Menards is a separate corporation that is not related to the Capital One defendants. The trustee has alleged no factual or legal basis for holding Menards liable for the payments from Mack to Capital One that he seeks to recover.

The trustee responds that he has "provided what allegations he could" about Menards, referring to the three times that Menards is mentioned in the amended complaint. He then argues that "these events may be viewed as an integrated transaction." Trustee Response, p. 15. But he alleged no "events" and there are no allegations about "integrated transactions." And the trustee

cites no authority that recognizes such a theory in a fraudulent transfer claim.  He cites only two cases that have nothing to do with fraudulent transfer law.

The trustee has not alleged any factual or legal basis for recovering from Menards.  The entire complaint against Menards will be dismissed.


6.      <u>Conclusion</u>

The trustee has failed to state a claim in Count 1 against Capital One for fraudulent transfer based on constructive fraud.  The defects in the claim cannot be fixed through amendment so it will be dismissed with prejudice.

The motion to dismiss the claim in Count 2 against Capital One for fraudulent transfer based on actual fraud will be denied.

All three claims against Menards will be dismissed.


Dated: November 16, 2020                           ENTERED:

                                                   _____
                                                   Carol A. Doyle
                                                   United States Bankruptcy Judge